**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**MELISSA ROSS,**

**Movant,**

**v.** **Case No. 2:01-cr-00254-1**
**Case No. 2:05-cv-00095**

**UNITED STATES OF AMERICA,**

**Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence, filed pursuant to 28 U.S.C. § 2255, on February 3, 2005 (docket sheet document # 183), with attachments and exhibits.

Movant, Melissa Ross (hereinafter referred to as "Defendant"), is serving an 84 month period of imprisonment, to be followed by a three year term of supervised release, upon her guilty plea to distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1) and 2. (Judgment in a Criminal Case, # 160, entered March 26, 2003.) The District Court also imposed a special assessment of $200.00, and waived imposition of a fine. Id. Defendant did not take a direct appeal; thus her conviction was final on or about April 9, 2003.

Defendant raises the following grounds for relief in her Motion:

A. Ground one: Defendant's conviction was obtained by action of grand or petit jury that was unconstitutionally selected and impaneled.

B. Ground two: Conviction obtained by plea of guilty which was unlawfully induced or not voluntary or with understanding of the nature of the charges and the consequences of the plea.

C. Ground three: Conviction obtained by insufficient evidence to support a conviction under 21 U.S.C. 841(a)(1) and 18 U.S.C. 924(c)(1) and § [2] (aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime).

D. Ground four: Sixth Amendment violation of illegal sentencing for factors not admitted to nor found by a jury.

E. Ground five: Violation of the Defendant's Fifth and Fourteenth Amendment by prosecutorial misconduct.

F. Ground six: Defendant's "denial of effectiveness of counsel."

(1) The defendant never made it to trial with the letter stating that it was nothing that supported the government. The counsel for the defendant still did not go to trial after the defendant pled "not guilty" at her initial plea hearing.

(2) The counsel for the defendant did not investigate the alleged charges against the defendant and allowed the defendant to sign a guilty plea.

(3) The counsel for the defendant did not pursue an appeal after the defendant was sentenced, the defendant advised counsel that she wanted to file an appeal.

(4) The counsel for the defendant did not answer or reply to the request of the defendant trying to obtain her entire file [in order to file] her 2255 motion in a timely manner.

(Motion, at 5-10, attachment 6(F).)

<u>The Motion is untimely.</u>

Prior to 1996, a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 was not subject to a specific time limitation with respect to filing of the motion. However, in 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996,(hereinafter the "AEDPA"), which established a one-year period of limitation governing the filing of motions for collateral relief under 28 U.S.C. § 2255.

The one-year period runs from the latest of one of four specified events:

> (1) the date on which the judgment on conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or Laws of the United States is removed if the movant was prevented from making such motion by governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court if that right has been duly recognized by the Supreme Court and made retroactively applicable to cases on review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. Defendant's conviction became final on or about April 9, 2003, when the time for filing a notice of appeal expired, and none of the other events specified in section 2255 are applicable in this case. Thus Defendant's § 2255 motion had to have been filed on or before April 9, 2004, nearly ten months before it was actually filed.

Defendant argues that she meets the fourth exception to the

limitations period; that is, she claims that

> only after she was finally in prison she gained documents and papers that shows the only evidence the prosecutor had on her was allegedly that the petitioner had not admitted to any criminal activity, and NO lab reflected any amount of crack cocaine and definitely not 50 or more grams as the prosecutor had alleged. Also the fact that the petitioner was forced to sign a guilty plea for aiding and abetting for the use of a firearm that was never found on the petitioner or in her sole or constructive possession.
>
> * * *
>
> Petitioner argues that on December 3, 2004, she discovered that the Government did not have anything on file to actually charge her with. Petitioner's efforts to obtain her papers started after March 26, 2003, only after other inmates, not her attorney, informed her that she might have a post-conviction remedy claim under a § 2255 petition.

(Motion, attachment G(7).) Defendant also provides an unverified "Affidavit," which states, in pertinent part, that "Attorney Smith in his deliberate attempt to 'keep Petitioner's papers from her' thwarted her attempts to get her § 2255 Motion into the Courts in a timely fashion." Id.

The undersigned has reviewed the transcripts of Defendant's extensive plea hearing. On August 5, 2002, Defendant testified as to the factual basis for the plea in response to direct questioning by Judge Copenhaver:

> She sold crack cocaine to support her habit, and she knew that her brother, Eric Ross, was carrying a gun.
> She sold crack cocaine out of her apartment at Roseberry Circle, including the sale on August 30, 2001, to Lori Corns for $100.
> She knew she was selling crack cocaine because she had smoked some of the batch which she sold to Lori Corns.

She knew her brother to have one weapon, a Taurus 9mm with an obliterated serial number, which was not loaded, and for which Eric Ross had no ammunition.
Eric Ross had the weapon to protect his drug transactions.
Melissa Ross had her own drug transactions and was "acting as [her] own person." They obtained their crack cocaine from different sources.
On August 30, Melissa Ross had only 3 grams of crack cocaine, part of which she sold to Lori Corns.
She did not know where Eric Ross kept the Taurus 9mm, although she knew it was in the apartment.
She knew that Eric Ross was selling crack cocaine out of her apartment.
She did not have anything to do with the weapon.

(Tr. Plea Hrng, # 96, at 36-44.)

Then Assistant United States Attorney (AUSA) Travis Gery proffered the government's evidence as follows:

> MR. GERY: We would be able to present information which would prove – I don't want to suggest to the Court that I believe we can prove that Ms. Ross herself had physical possession of the firearms charged in the indictment. It's charged as aiding and abetting, and I believe we'd be able to prove that she was part of a larger conspiracy that encompassed the time period of July to August of 2001; and that on August 30th of 2001, after she made the delivery that she's described to the Court, there was a search warrant executed at her apartment.
>
> During the execution of that search warrant, three individuals were found in the apartment: Ms. Ross; her brother, Mr. Eric Ross who has already entered a plea of guilty before Your Honor; and a third individual, Mr. Derwin Coles.
>
> Also found were the three firearms set forth in Count Seven of the indictment and approximately, a little over 118 grams of crack cocaine which was in the back bedroom, the same location that Mr. Coles was found in.
>
> My understanding is Mr. Ross has indicated that that belonged to Mr. Coles, and that both he, Mr. Ross, and his sister, Ms. Ross, would receive amounts of that from

> Mr. Coles, and that's what they were selling, which would tie her into the overall conspiracy, as well as possessing with the intent to deliver that crack cocaine which was found during the course of the execution of the search warrant.
>
> In addition to that, also found during the execution of the search warrant in Ms. Ross's purse, I believe was U.S. currency commingled with which was, at least a part of it, it may have been the entire $100, but at least a part of what was the buy money from the August 30 controlled delivery that she described to Your Honor.
>
> And also found in a coat belonging to Mr. Coles, it was in the back bedroom where he was located, was, there was approximately $4,000 in cash. And commingled with that was at least a portion of the buy money from a previous controlled delivery that occurred on, I believe, August 28th, also suggesting, tending to prove the overall conspiracy, as well as that all three were acting in concert. Therefore, the possession with intent to deliver, all three have been charged as aiders and abettors.

Id., at 44-46. In response, Melissa Ross testified:

> THE DEFENDANT [ROSS]: As far as us acting as a corporation or in cooperation with each other, I, I bought my personal from somewhere else. And – let's see. And the rest of it is, the rest of it is true. I'm trying to remember everything he said. Yeah.

Id., at 46. In response to additional direct questioning by Judge Copenhaver, Melissa Ross further testified that:

> She obtained her own crack cocaine from her own source.
> The source was other than Eric Ross.
> The source was other than Derwin Coles.
> She knew Eric Ross was in her apartment with crack cocaine.
> She knew Eric Ross had a weapon with him.
> She did not know the quantity of crack cocaine that was in the room.
> The buy money from Lori Corns was not in her purse; it was in her pocket when she was searched.
> The crack cocaine that she sold to Lori Corns was broken off Melissa Ross's cocaine.

> She did not know whether the Taurus 9mm was loaded or not loaded, but she saw a clip attached to it, and she would not be surprised to learn that there was ammunition in the clip.

Id., at 46-52.

Due to the inconsistencies between Defendant's and the government's factual bases, Judge Copenhaver directed AUSA Gery to recite the government's proof, and inquired of Defendant whether she agreed that the United States could prove the stated facts beyond a reasonable doubt. Id., at 56-57. Defendant agreed that the government could prove that:

> On August 23, 2001, a confidential informant ("CI") went to Ms. Ross's apartment for the purpose of making a controlled buy of crack cocaine. She met with Ms. Ross. She observed Ms. Ross obtain a quantify of crack cocaine from a coat pocket that was laying on the couch. Ms. Ross gave the CI that crack cocaine. The CI gave Ms. Ross $100. The CI came back and was debriefed by police officers and related that version to them.
>
> On August 27, 2001, the CI again went to Ms. Ross's apartment for the purpose of making a controlled buy of crack cocaine. On that occasion Ms. Ross was not there. The CI purchased crack cocaine from Eric Ross. And I believe it was the same scenario. Eric Ross gave crack cocaine to the CI, and the CI gave Eric Ross $100; left; met up with her. Police officers, control agents turned over the crack cocaine and gave a debrief where she indicated what had happened.
>
> On August 28, 2001, the same CI again went to Ms. Ross's apartment for the purpose of making a controlled buy of crack cocaine. At that time, the CI met with and conversed with Ms. Ross; observed Ms. Ross remove a quantity of cocaine from a coat that was laying on the couch; and I believe her brother, Eric, was present on the couch at the time. From that quantity of cocaine, Ms. Ross removed a smaller portion. The CI then gave Ms. Ross $100; left the apartment; went back and met up with the police officers and gave them the crack cocaine; and

> was debrief on the events that transpired.
>
> Then on August 30th, the CI again went to the apartment of Ms. Ross, again for the purpose of making a controlled buy of crack cocaine; met with Ms. Ross; again observed Ms. Ross remove a quantity of cocaine from a jacket that was on the couch, the same jacket that the CI had described on the previous occasions; and from that quantity of cocaine, took a smaller piece; sold it to [the CI] for $100. From there, the CI returned to the police officers, handed over the crack cocaine, and reported what had happened.
>
> Immediately after that, police officers executed a search warrant on that residence. Three individuals were found in the apartment: Ms. Ross, Mr. Eric Ross, and Derwin Coles. 2.92 grams of crack cocaine were recovered from the pocket of the jacket on the couch. Also recovered from Ms. Ross was currency, at least part of which was the $100 buy money from the August 30th controlled delivery. Ms. Ross was present when three guns were found; one was under a couch cushion, two were in the back. Two bags were found in a purse in the room where Derwin Coles was found; each bag had multiple bags of crack cocaine. The weight of the cocaine exceeded 118 grams. Approximately $4,000, including buy money from the August 28th controlled delivery, was found in a coat owned by Derwin Coles. Coles denied ownership of the money.

Id., at 58-65. Judge Copenhaver deferred his ruling on the adequacy of the factual basis for the § 924(c)(1) charge. Id., at 66.

On August 7, 2002, Judge Copenhaver reconvened the guilty plea hearing and made the following finding:

> One of the firearms, found under the cushion on the living room couch, was a Taurus 9 millimeter that was known by Melissa to be kept by Eric Ross, who was also known by her to be a distributor of crack cocaine, that he kept at her apartment. * * *
>
> * * * The Court concludes that Melissa Ross was engaged during this period of August 23 to 30, 2001, in

> the sale of crack cocaine along with those who were using her apartment in part for the purpose of conducting a crack cocaine sales operation which they protected with the use of the firearms that were recovered on August 30, 200[1]. Their possession of those firearms was aided and abetted by Melissa Ross who knowingly allowed them to use her apartment for the crack cocaine operation which she knew was being protected by their firearms. The crack cocaine recovered from the apartment on August 30 was possessed for distribution.
>
> The Court makes all of those findings based on the record of the Rule 11 hearing with Melissa Ross, and indeed the Court informed counsel later that same day that it had accepted the - - I should say that it had found a factual basis for the plea to count seven.
>
> The Court simply observes at this juncture that independently of those findings, the Court notes that the evidence in the trial of *United States v. Derwin Coles* substantiates and expands on those same findings and fortifies them.

(Tr. Proceedings, # 92, at 3-4.)

Based on the foregoing, it is apparent that there is no truth or substance whatsoever to Defendant's assertion that the United States had no evidence against her.

Defendant also argues that her "claim involves a newly recognized right," which is the third exception to the one-year limitations period. Defendant relies on the decision in Blakely v. Washington, 542 U.S. 296 (2004).

On January 12, 2005, the Supreme Court decided United States v. Booker, 125 S. Ct. 738, which reaffirmed the Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), applied the holding in Blakely to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence

exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The Booker holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Defendant's case was final as of April 9, 2003. Thus Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

On November 7, 2005, the United States Court of Appeals for the Fourth Circuit held:

> The rule announced in Booker is a new rule of criminal procedure, but it is not a watershed rule. Accordingly, the rule is not available for post-conviction relief for federal prisoners, like Morris, whose convictions became final before Booker (or Blakely) was decided.

United States v. Morris, No. 04-7889, slip op. at 11 (4th Cir. Nov. 7, 2005).

Nine other Circuit Courts of Appeals previously reached the same conclusion and ruled that Booker does not apply retroactively to cases on collateral review. See United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005); Padilla v. United States, 416 F.3d 424 (5th Cir. 2005)(per curiam); Never Misses A Shot v. United States, 413 F.3d 781 (8th Cir. 2005)(per curiam); United States v. Bellamy, 411 F.3d 1182 (10th Cir. 2005); Lloyd v. United States, 407 F.3d 608

(3rd Cir.), cert. denied, 126 S. Ct. 288 (2005); Guzman v. United States, 404 F.3d 139 (2nd Cir.), petition for cert. filed, No. 05-5187 (Jul. 5, 2005); Humphress v. United States, 398 F.3d 855 (6th Cir.), cert. denied, 126 S. Ct. 199 (2005); Varela v. United States, 400 F.3d 864 (11th Cir.)(per curiam), cert. denied, 126 S. Ct. 312 (2005); McReynolds v. United States, 397 F.3d 479 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005). Not one circuit court of appeals has decided that Blakely or Booker applies retroactively on collateral review.

Based on Morris, and the other decisions rendered by circuit courts of appeals reaching the same conclusion, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before Blakely and Booker were decided, and that neither Blakely nor Booker applies retroactively on collateral review.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the District Court dismiss Movant's Motion filed pursuant to 28 U.S.C. § 2255 as untimely.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule

45(c) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Melissa Ross, and to counsel of record.

November 23, 2005
Date

Mary E. Stanley
United States Magistrate Judge